# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATALIE SCHIAVONE, | |
| Plaintiff, | Case No. 16-cv-09848 |
| v. | |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Natalie Schiavone ("Plaintiff") initiated this action against Defendant Prudential Insurance Company of America ("Defendant") after Defendant terminated Plaintiff's long term disability benefits. Compl. [1]. Plaintiff seeks review of that decision pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. In addition to its answer, Defendant filed a single counterclaim seeking to recover alleged overpayment of disability benefits to Plaintiff. Def.'s Ans. & Counterclaim [9] 11. Plaintiff now moves to dismiss Defendant's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). Pl.'s Mot. Dismiss [10]. For the reasons explained below, Plaintiff's motion is denied.[1]

---

[1] Plaintiff's motion also seeks to strike Defendant's counterclaim pursuant to Rule 12(f), which allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions, however, are generally disfavored because they "potentially serve only to delay." *LaSalle Bank Nat'l Assoc. v. Paramont Properties*, 588 F. Supp. 2d 840, 860 (N.D. Ill. 2008) (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)). Because the Court finds that Plaintiff's motion also fails under Rule 12(b)(6), Rule 12(f) will not be further discussed.

## I. Background

Plaintiff was a participant in a group disability insurance plan (the "Plan") provided by her former employer. Def.'s Ans. & Counterclaim [9] 11. Long-term disability benefits under the Plan are funded by a group insurance policy issued by Defendant. *Id.* Defendant operates as the claims administrator of the Plan and determines eligibility for long-term disability benefits. *Id.*

The Plan provides that any long-term disability benefit payable under the Plan may be reduced by "deductible sources of income." *Id.*; Compl. [1] Ex. A at 5. "Deductible sources of income" are defined to include, *inter alia*, disability payments received under the Social Security Act. Def.'s Ans. & Counterclaim [9] 12; Compl. [1] Ex. A at 18. Moreover, the Plan affords Defendant the "right to recover" any overpayment of benefits due a beneficiary's receipt of deductible sources of income. Def.'s Ans. & Counterclaim [9] 13; Compl. [1] Ex. A at 27.

If Defendant determines that a beneficiary may qualify for deductible income, it may reduce disability payments by the amount of the beneficiary's estimated deductible entitlement. Compl. [1] Ex. A at 20. Defendant will not make such reductions, however, if the beneficiary agrees to sign a reimbursement agreement that promises to repay Defendant any overpayment caused by a deductible income award. *Id.*

Plaintiff began receiving long-term disability benefits under the Plan on January 24, 2014. Def.'s Ans. & Counterclaim [9] 11. On May 12, 2015, Plaintiff executed a reimbursement agreement with Defendant. *Id.* at 12. In the agreement,

Plaintiff: (1) acknowledged that benefits under the Plan were reducible by any benefits received under the Social Security Act; (2) requested that Defendant postpone any reduction in benefits under the Plan until Plaintiff was actually awarded Social Security benefits; (3) promised to notify Defendant if she was ultimately awarded Social Security benefits for her disability; and (4) agreed to immediately repay Defendant for any Social Security benefits awarded retroactively. *Id.*

Plaintiff continued to receive benefits under the Plan until January 23, 2016. *Id.* at 13. In May 2016, however, Plaintiff received an award of Social Security benefits which was retroactive to September 2013. *Id.* Defendant alleges that as a result of the Social Security award, Plaintiff was overpaid long-term disability benefits under the Plan, and to date, has failed to reimburse Defendant. *Id.*

Defendant now seeks equitable relief under § 502(a)(3) of ERISA in the amount of the overpayment. *Id.* at 14. Specifically, Defendants asks this Court to impose "a constructive trust over the overpayment" purportedly "kept and maintained" by Plaintiff. *Id.* According to Defendant, Plaintiff's acceptance of long-term disability benefits under the Plan and execution of the reimbursement agreement created a "lien by agreement" upon Plan benefits that were later covered by Plaintiff's Social Security award. *Id.* Defendant asserts that the entire amount of this overpayment is currently "in [Plaintiff's] possession" in a "bank account or other investment." *Id.*

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A motion to dismiss tests the sufficiency of a claim, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998). To survive a motion to dismiss, a claim must first provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice" of what the claim is "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, the claim must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The "amount of factual allegations required to state a plausible claim for relief depends

4

on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). In evaluating a claim, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the non-moving party, here, Defendant. *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. Section 502(a)(3) of ERISA

Under § 502(a)(3) of ERISA, a civil action may be brought "by a participant, beneficiary, or fiduciary":

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or
>
> (B) to obtain other appropriate *equitable relief*
>
> > (i) to redress such violations or
> >
> > (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added). Plaintiff argues that Defendant's counterclaim seeking reimbursement of disability overpayments does not pursue "appropriate equitable relief." *See* Pl.'s Mem. Supp. Mot. Dismiss [11] 2-4.

The Supreme Court has interpreted "equitable relief" under § 502(a)(3) as being "limited to 'those categories of relief that were *typically* available in equity' during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate)." *Montanile v. Bd. of Trustees of Nat. Elevator*

5

*Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016) (quoting *Mertens v. Hewitt Associates,* 508 U.S. 248, 256 (1993)) (emphasis in original). Such equitable relief often includes "injunction, mandamus, and restitution." *Mertens*, 508 U.S. at 256. Compensatory damages, on the other hand, are the classic form of *legal* relief. *Id.* at 255.

Importantly, however, "simply phrasing the request for relief in equitable terms—e.g., restitution, unjust enrichment, an equitable lien—is not dispositive." *Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 453 (7th Cir. 2016). Rather, whether the particular relief a party seeks is legal or equitable depends upon: (1) the *basis* for the claim; and (2) the nature of the underlying *remedies* sought. *Montanile*, 136 S. Ct. at 657. Both must be equitable to proceed under § 502(a)(3). *Cent. States*, 840 F.3d at 453.

Over the past fifteen years, the Supreme Court developed and applied this approach through a series of ERISA cases where a plan fiduciary sought reimbursement of benefits after the plan beneficiary recovered money from a third party. In each case, ERISA beneficiaries suffered injuries in car accidents and the ERISA plans paid for the medical care to treat their injuries. When the beneficiaries later received monetary settlements from tortfeasors, the ERISA plans demanded reimbursement from the settlement proceeds. After the beneficiaries refused, the ERISA plans brought restitution claims under § 502(a)(3) to enforce reimbursement provisions in their plan documents. Further discussion of these cases proves fruitful in framing the issues presented here.

### 1. *Great–West Life & Annuity Ins. Co. v. Knudson*

First, in *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 207 (2002), the ERISA plan that covered the respondents' medical expenses also included a reimbursement provision that afforded the plan "the right to recover from the [respondents] any payment for benefits" paid by the plan that the respondents ultimately recovered from a third party. *Id*. Specifically, the reimbursement provision imposed "a first lien upon any recovery, whether by settlement, judgment or otherwise," up to the amount of benefits paid by the plan. *Id*. If the respondents recovered from a third party and failed to reimburse the plan, then the plan held the respondents personally liable to the plan "up to the amount of the first lien." *Id*.

The respondents subsequently negotiated a monetary settlement with the car manufacturer and other alleged tortfeasors. *Id*. Notably, however, the settlement was not paid to the respondents; instead, it was disbursed to a Special Needs Trust (to provide for future medical care) and to the respondents' attorney (who, after deducting his own fees and costs, placed the remaining funds in a client trust account from which he paid the respondents' creditors.). *Id*. at 214. Following the settlement disbursement, the plan sued the respondents for a money judgment. *Id*.

On appeal, the plan argued, *inter alia*, that their suit was authorized by § 502(a)(3) because they sought "restitution" of medical expenses previously paid. *Id*. at 212. The Supreme Court disagreed. According to the Court, "not all relief falling under the rubric of restitution is available in equity." *Id*. Rather, in "the

days of the divided bench" a plaintiff could seek restitution in equity—"ordinarily in the form of a constructive trust or an equitable lien"—where "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. A court of equity "could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner." *Id.*

On the other hand, where the property sought to be recovered had "been dissipated so that no product remain[ed]," the plaintiff was no more than a "general creditor" and could enforce neither a constructive trust nor an equitable lien upon other property of the defendant. *Id.* at 213-14 (internal quotations omitted). Thus, the Court held, for restitution to lie in equity under § 502(a)(3), "the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff *particular funds or property in the defendant's possession.*" *Id.* at 214 (emphasis added).

The funds to which the plan in *Great–West* claimed an entitlement (the proceeds from the respondents' tort settlement), however, were not in respondents' possession, but rather had been placed in a "Special Needs Trust" and given to the respondents' attorneys. *Id.* The plan's suit, therefore, merely claimed that the plan was "contractually entitled to *some* funds for benefits that they had conferred." *Id.* (emphasis in original). The Court held that such restitution was "not equitable— the imposition of a constructive trust or equitable lien on particular property—but

legal—the imposition of personal liability for the benefits that they conferred upon respondents." *Id.* In other words, neither the basis for the plan's claim nor the particular remedy sought were equitable; thus, the plan could not sue under § 502(a)(3). *See Montanile*, 136 S. Ct. at 657.

### 2. *Sereboff v. Mid Atl. Med. Servs., Inc.*

Three years later, in *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006), the Court reaffirmed the principles of *Great–West* while distinguishing its facts. The ERISA plan in *Sereboff* contained a reimbursement provision similar to that found in *Great–West*. *Id.* at 359. As in *Great–West*, the plan paid the petitioners' medical expenses following an automobile accident. *Id.* at 360. After the petitioners filed a tort action against several third parties, the plan asserted a lien on the anticipated proceeds from the suit. *Id.* The petitioners eventually settled their suit for monetary damages; unlike in *Great-West*, however, the petitioners actually received settlements proceeds. *Id.* Despite this fact, no money was sent to the plan in satisfaction of its claimed lien. *Id.*

The plan filed suit under § 502(a)(3). *Id.* After the plan sought a temporary restraining order and preliminary injunction requiring the petitioners to "retain and set aside" a portion of their settlement earnings, the district court approved a stipulation by the parties under which the petitioners agreed to preserve a portion of the settlement funds in an investment account until the case was resolved. *Id*.

Relying upon this fact on appeal, the Supreme Court held that the "impediment to characterizing the relief in [*Great–West*] as equitable" was not

9

present in *Sereboff*. *Id.* at 362. Unlike the plan in *Great–West*, which sought to impose personal liability from general assets "for a contractual obligation to pay money," the plan in *Sereboff* sought "specifically identifiable" funds that were "within the possession and control" of the petitioners—that portion of the tort settlement set aside and "preserved [in the petitioners'] investment accounts." *Id.* at 362-63. On these facts, the "nature of the recovery" was equitable. *Id.* at 363.

The Court further stated that the "basis for [the plan's] claim" was also equitable because the plan relied upon "the familiar rule of equity that a contract to convey a specific object" not yet acquired "creates a lien" on that object as soon as the contractor "gets a title to the thing." *Id.* at 363-64 (internal quotations and brackets omitted). In other words, the plan's claim for reimbursement "was the modern-day equivalent of an action in equity to enforce such a contract-based lien— called an 'equitable lien by agreement.'" *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1545 (2013).[2] Accordingly, the plan's suit under § 502(a)(3) was proper.

### 3. *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*

The Court entered the breach once more in *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651 (2016). As in *Great-West* and *Sereboff*, the petitioner in *Montanile* participated in an ERISA plan that obliged the administrator to pay medical expenses; in turn, the plan was entitled to reimbursement if the petitioner later recovered money from a third party. *Id.* at 655. Once again, the petitioner received plan benefits after suffering injuries in a

---

[2] The Court reaffirmed its *Sereboff* analysis in *McCutchen*, which dealt with similar facts.

10

car accident. *Id.* As in the present case, the petitioner signed a reimbursement agreement reaffirming his obligation to reimburse the plan from any recovery he might later receive "as a result of any legal action or settlement or otherwise." *Id.* at 656.

After the petitioner secured a tort settlement, he paid a portion to his attorneys and ultimately retained the remainder. *Id.* Six months later, the plan sued for reimbursement under § 502(a)(3). Specifically, the plan asked the court "to enforce an equitable lien upon any settlement funds or any property which [were] in [the petitioner's] actual or constructive possession." *Id.* (internal quotations omitted).

At summary judgment, the petitioner argued that by the time the plan filed suit, the settlement funds had been dissipated; as a result, the plan could not identify a fund "separate and distinct" from the petitioner's general assets as was present in *Sereboff*. *Bd. of Trustees of the Nat. Elevator Indus. Health Ben. Plan v. Montanile*, No. 12-80746-CIV, 2014 WL 8514011, at *8 (S.D. Fla. Apr. 17, 2014). The district court held that, although *Sereboff* did not address the issue, "a beneficiary's dissipation of assets is immaterial when a fiduciary asserts an equitable lien by agreement," and that the plan was entitled to reimbursement from the petitioner's general assets. *Id.* at *10. The Eleventh Circuit affirmed. 593 F. App'x 903, 908 (11th Cir. 2014).

The Supreme Court reversed. After first discussing the Court's precedent in *Great-West* and *Sereboff*, the Court acknowledged that the basis for the plan's claim

11

was equitable. 136 S. Ct. at 658. That is, the plan "had an equitable lien by agreement that attached to [the petitioner's] settlement fund when he obtained title to that fund." *Id.* Moreover, the nature of the plan's underlying remedy *would have* been equitable had it immediately sued to enforce the lien "against the settlement fund then in [the petitioner's] possession" rather than wait and seek to recover "out of [the petitioner's] general assets." *Id.*

Echoing *Great-West*, however, the Court further explained that a plaintiff can ordinarily enforce an equitable lien "only against specifically identified funds that remain in the defendant's possession or against traceable items that the defendant purchased with the funds (*e.g.,* identifiable property like a car)." *Id.* In contrast, a defendant's "expenditure of the entire identifiable fund on nontraceable items (like food or travel) destroys an equitable lien." *Id.* Although a plaintiff "may have a personal claim against the defendant's general assets," recovering out of those assets constitutes "a *legal* remedy, not an equitable one." *Id.* (emphasis added).

The Court reiterated that equitable remedies are, as a general rule, "directed against some specific thing"; that is, "they give or enforce a right to or over some particular thing" rather than "a right to recover a sum of money generally out of the defendant's assets." *Id.* at 658-59. Thus, if "instead of preserving the specific fund subject to the lien, the defendant dissipate[s] the entire fund on nontraceable items, that complete dissipation eliminate[s] the lien." *Id.* at 659. Although the defendant's conduct may be wrongful, the plaintiff cannot attach the defendant's

12

general assets instead. *Id.* This rule applies to equitable liens by agreement, as well as other types of equitable liens. *Id.*

Because the lower courts erroneously held that the plan could recover out of the petitioner's general assets, the Court remanded for further proceedings to determine whether the petitioner kept his settlement fund separate from his general assets or dissipated the entire fund on non-traceable purchases. *Id.* at 662.

### 4. The Present Litigation

With the above framework in mind, this Court turns to the merits of Plaintiff's motion. As required by *Montanile* and its predecessors, in determining whether Defendant's counterclaim seeks "appropriate equitable relief" under § 502(a)(3), the Court examines: (1) the basis for the claim; and (2) the nature of the underlying remedies sought. *Montanile*, 136 S. Ct. at 657.

As to the nature of recovery, Defendant's counterclaim does not seek to impose personal liability upon Plaintiff, but rather reimbursement of *particular* funds or property: overpaid long-term disability benefits paid under the Plan between January 2014 and January 2016. *See* Def.'s Ans. & Counterclaim [9] 14 ("The entire amount of the overpayment is money belonging in good conscience to Prudential or the plan under the terms of the plan and Schiavone has expressly agreed to repay any benefit overpayment."). Specifically, Defendant asks this Court to impose a constructive trust or enforce an equitable lien over the overpayment. *Id.* As in *Sereboff,* Defendant alleges that such funds are still in Plaintiff's possession. *Id.* ("Upon information and belief, the entire amount of the

13

overpayment is in Schiavone's possession . . . in a bank account or other investment."). Thus, the nature of Defendant's desired recovery is equitable under § 502(a)(3).

Seeking shelter under *Montanile*, Plaintiff claims that any overpayments under the Plan "were long gone" by the time Plaintiff was awarded retroactive Social Security benefits in May 2016. Pl.'s Mem. Supp. Mot. Dismiss [11] 3; *see also* Pl.'s Reply [18] 2-3 ("[W]hile Plaintiff was receiving benefits from Prudential, she only received 60% of her pre-disability income, which she subsisted on for two years. Since Plaintiff is not independently wealthy, those funds were expended to pay for the necessities of life—food, clothing, shelter, and medical treatment/medicine.") (internal citations omitted). Plaintiff argues that, as a result, Defendant's counterclaim is actually "directed against [Plaintiff's] general assets and [thus] is not equitable in nature." *Id.*

As stated in *Montanile,* such dissipation would indeed prove problematic. When considering a motion to dismiss under Rule 12(b)(6), however, a "court's inquiry is generally limited to the factual allegations contained within the four corners of the complaint." *Mannie v. Potter*, 326 F. Supp. 2d 880, 882 (N.D. Ill. 2004) (quoting *In re Nat'l Indus. Chem. Co. v. Steege,* No. 98-cv-4081, 1998 WL 887065, at *2 (N.D. Ill. Dec.11, 1998)). Moreover, at this stage, the Court must construe all well-pled facts in Defendant's favor. *See Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). Given this procedural posture, Plaintiff's factual claims to the contrary are unavailing.[3]

Regarding the basis of Defendant's claim, both the terms of the Plan and Plaintiff's reimbursement agreement afford Defendant the "right to recover" any overpayment of benefits due a beneficiary's receipt of deductible sources of income. Def.'s Ans. & Counterclaim [9] 13; Compl. [1] Ex. A at 27. That is, the Plan identifies a portion of a "specifically identifiable" fund—the overpaid portion of disability payments. *See Sereboff,* 547 U.S. at 362-63. This fund purportedly constitutes money or property "belonging in good conscience" to Defendant, and "can clearly be traced to particular funds or property" in Plaintiff's possession. *Great-West*, 534 U.S. at 213. The basis of Defendant's claim is equitable under § 502(a)(3).

### B. Section 207(a) of the Social Security Act

Plaintiff next asserts that Defendant's Counterclaim is barred under § 207(a) of the Social Security Act. Section 207(a) provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a). Plaintiff argues that, under this provision, her Social Security benefits received in May 2016 are protected from suit. Pl.'s Mem. Supp. Mot.

---

[3] Plaintiff's reference to *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601 (7th Cir. 2007), and *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012), both of which were decided at the summary judgment stage, is equally unpersuasive.

15

Dismiss [11] 4. Plaintiff misinterprets Defendant's counterclaim. As discussed above, Defendant does not seek Plaintiff's Social Security benefits, but rather overpaid disability benefits paid under the Plan. When "a plan contains a 'lien by agreement' and the 'overpayment' is caused by subsequent social security payments, [§ 207] presents no bar to recovery." *Holmstrom v. Metro Life Ins. Co.*, 615 F. Supp. 2d 722, 753 (N.D. Ill. 2009), *rev'd on other grounds*, 615 F.3d 758 (7th Cir. 2010).

On this score, the Seventh Circuit's decision in *Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323 (7th Cir. 2011), is instructive. There, the appellant was awarded long-term disability benefits under an ERISA benefit plan. *Id.* at 326. After the appellant retroactively received Social Security benefits, the plan sought to recoup equivalent overpayments as provided by the plan. *Id.* On appeal, the appellant argued that the plan's claim was barred by § 207(a). *Id.* at 331. Although the Seventh Circuit acknowledged that § 207(a) precluded the plan from imposing a lien directly on the appellant's *social security benefits*, it held that a suit seeking an equitable lien on specific funds paid to the appellant under the plan was permissible. *Id.* at 332. According to the court, "although the amount in question happens to be the same as the amount of [the] retroactive social security payment, the funds [the plan] is targeting do not come from social security. Rather, they come from overpayments [the plan] paid to [the appellant]. Thus, § 207(a) does not bar recovery." *Id.* The same reasoning applies here.[4]

---

[4] In her reply, Plaintiff contends that *Montanile* overruled *Weitzenkamp* to the extent it relied upon *Sereboff*. Pl.'s Reply [18] 3. The Seventh Circuit's analysis of § 207(a), however, did not rely upon *Sereboff*, but rather other circuit court decisions on the subject. *See Weitzenkamp*, 661 F.3d at 332 (citing *Hall v. Liberty Life Assurance Co. of Boston,* 595 F.3d 270, 274-75 (6th Cir. 2010); *Cusson v.*

16

## IV. Conclusion

For the reasons discussed above, Plaintiff's Motion to Strike and Dismiss Defendant's Counterclaim [10] is denied.

Date: April 26, 2017

Entered:

_____
John Robert Blakey
United States District Judge

---

*Liberty Life Assurance Co. of Boston,* 592 F.3d 215, 232 (1st Cir. 2010)). Regardless, the Seventh Circuit has since recognized *Montanile* as supplementing, not overruling, previous Supreme Court cases such as *Sereboff*. *See Cent. States v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 452 (7th Cir. 2016) ("The quartet has since become a quintet with the Court's recent decision in *Montanile*.").